UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRADER JOE'S COMPANY,

            Plaintiff,

    v.

MICHAEL NORMAN HALLATT, /b/a
PIRATE JOE'S a/k/a TRANSILVANIA
TRADING COMPANY,

           Defendants.

CASE NO. C13-768 MJP

ORDER GRANTING MOTION TO
DISMISS

      This matter comes before the Court on Defendant Michael Norman Hallatt d/b/a Pirate

Joe's a/k/a Transilvania Trading Company (collectively, "Pirate Joe's")'s motion to dismiss for

lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 25.) The Court

considered the motion, Plaintiff Trader Joe's response, Pirate Joe's reply, and all related

documents. The motion to dismiss is GRANTED. The Court notes Pirate Joe's has pending a

motion to stay discovery. (Dkt. No. 32.) This motion is MOOT because this Court lacks subject

matter jurisdiction.

**Background**

Trader Joe's is a well known grocery store in the United States having its name and "South Pacific" theme since 1967. (Dkt. No. 1 at 3.) More than 390 Trader Joe's grocery stores operate in 30 states and the District of Columbia, including 14 stores in the state of Washington. (Id.) Trader Joe's alleges its trademarks are also well known in Canada. More than forty percent of credit card transactions at Trader Joe's Bellingham, Washington location are with non-U.S. Residents. (Id. at 4.) Trader Joe's does not have any locations outside the United States. Trader Joe's has a website featuring its distinctive theme, but visitors cannot purchase Trader Joe's products through the website.

The United States Patent and Trademark Office ("USPTO") granted Trader Joe's a trademark registration for the TRADER JOE'S trademark (No. 2,171, 157) for "retail services in the field of specialty foods and beverages" in International Class 42. (Dkt. No. 1 at 4, Dkt. No. 1-3 at 1.) The USPTO also granted Trader Joe's a Trademark Registration (No. 4, 001,533) for the TRADER JOE'S mark for "retail grocery services" in International Class 35. (Id.) Trader Joe's also obtained numerous United States trademark registrations for the TRADER JOE'S mark in connection with branded goods sold at its retail stores. (Dkt. No. 1 at 5.) Trader Joe's uses the TRADER JOE'S mark to identify both its retail stores and services and around eighty percent of goods it sells in its retail stores. (Dkt. No. 1 at 4.)

Defendant Hallatt owns and operates a grocery store in Vancouver, British Columbia, Canada, operating under the name Pirate Joe's. (Dkt. No. 24 at 3.) This store previously operated under the name "Transilvania Trading." (Id.) Hallatt admits he and others at his direction have purchased products at Trader Joe's paying full retail prices in the state of Washington. (Id.) Hallatt transports the products across the United States border to Canada, declaring the

ORDER GRANTING MOTION TO DISMISS- 2

1   transported merchandise to boarder agents. (Id. at 4.) Hallatt admits re-selling "unmodified"

2   Trader Joe's products in Canada and publically acknowledges the products he sells were

3   purchased from Trader Joe's. (Id.) Hallatt denies his activity is wrongful or intended to deceive

4   customers into believing Pirate Joe's and/or Transilvania Trading have been authorized or

5   approved by Trader Joe's to sell its branded products. (Id.) Trader Joe's contends Pirate Joe's

6   prominently displays Trader Joe's trademarks and other intellectual property to pass as an

7   approved Trader Joe's retailer. (Dkt. No. 1 at 8.) Defendant alleges Trader Joe's marks are

8   displayed in notices alerting customers it is not an authorized Trader Joe's retailer. (Dkt. No. 24

9   at 5.)  Defendant admits to using Trader Joe's grocery bags in the past but allege this practice has

10  stopped. (Id.)

11        Plaintiff filed its Complaint in federal court alleging Defendant violated the Lanham Act

12  by  including Federal Trademark Infringement, 15 U.S.C. § 1114(1); Unfair Competition, False

13  Endorsement and False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A); False Advertising, 15

14  U.S.C. § 1125 (a)(1)(B); and Federal Trademark Dilution, 15 U.S.C. § 1125(c). (Dkt. No. 1 at 9-

15  11.) Plaintiff also brought claims under state law. (Id. at 12-13.) Defendant moves to dismiss for

16  lack of subject matter jurisdiction, arguing the causes of action under the Lanham Act are the

17  basis for federal jurisdiction and the Lanham Act should not apply extraterritorially in this case.

18  (Dkt. No. 25 at 3-4.) Plaintiff counters the motion, arguing extraterritorial application of the

19  Lanham Act is appropriate.

20                                    **Analysis**

21        I.      Standard

22        Federal courts are courts of limited jurisdiction, but pursuant to 28 U.S.C. § 1331, they

23  "have broad adjudicatory authority over all civil actions arising under the Constitution, laws, or

24

1   treaties of the United States." Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 974

2   (9th Cir. 2012)(internal citations omitted). Because of this extensive power, jurisdictional

3   dismissals in actions based on federal questions are exceptional. Id. at 975. A federal court may

4   dismiss a federal question claim for lack of subject matter jurisdiction "only if (1) the alleged

5   claim under the Constitution or federal statutes clearly appears to be immaterial and made solely

6   for the purposes of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and

7   frivolous." Id. (internal citations omitted).

8          In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule

9   12(b)(1), courts must accept the allegations in the complaint as true, unless the challenger asserts

10  a factual attack with or in place of a facial attack. Wolfe v. Strankman, 392 F.3d 358, 362 (9th

11  Cir. 2004). A facial attack asserts the allegations contained in the complaint are insufficient on

12  their face to invoke federal jurisdiction. Id. A factual attack, in contrast, requires submission of

13  evidence that calls into dispute the truth of the allegations that support jurisdiction. Id.

14         Pirate Joe's argues it mounts both a facial and factual attack. (Dkt. No. 25 at 3.)

15  However, it does not present a single factual argument calling into question the facts alleged by

16  Trader Joe's. Pirate Joe's alleges it supplied evidence going to the "nationality/location of

17  business and achieving compliance factors" of the substantive legal analysis, which are discussed

18  below. (Dkt. No. 30 at 3.) However, the only evidence or argument Pirate Joe's offers is

19  Defendant Hallatt is a Canadian citizen but also holds U.S. Permanent Resident Alien status,

20  Pirate Joe's makes no sales and has no place of business in the United States, and Pirate Joe's

21  knows of no Trader Joe's locations in Canada. (Dkt. No. 25 at 7.) There is no dispute of facts;

22  these facts are not contested by Trader Joe's. (Dkt. No. 28 at 23.)

23

24

ORDER GRANTING MOTION TO DISMISS- 4

1    Pirate Joe's argues it cannot be expected, in making a factual attack, to present evidence

2    in the negative (i.e., lack of effect on U.S. commerce, lack of cognizable injury). (Dkt. No. 30 at

3    3.)  This argument fails. To make a factual attack, Pirate Joe's must actually challenge facts in

4    Plaintiff's complaint that go to jurisdiction. Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir.

5    2004). Unsupported and conclusory assertions going to Plaintiff's legal arguments are not

6    enough. This is evidenced by the Ninth Circuit's language on the review requirements for a

7    facial attack: "Once the moving party has converted the motion to dismiss into a factual motion

8    by presenting affidavits or other evidence properly brought before the court, the party opposing

9    the motion must furnish affidavits or other evidence necessary to satisfy its burden of

10   establishing subject matter jurisdiction. Savage v. Glendale Union High Sch., 343 F.3d 1036,

11   1039 n. 2 (9th Cir. 2003).  It cannot be said a factual attack is "clearly mounted" simply because

12   the motion to dismiss says it is making a factual attack; there must be an actual challenge to the

13   facts supporting jurisdiction. (Dkt. No. 30 at 2.)

14   Pirate Joe's fails to make a factual attack on jurisdiction, and this motion is properly

15   analyzed as a facial attack. However, even construing the motion as a facial attack, there is no

16   basis for extraterritorial application of the Lanham Act in this case.

17   II.    Lanham Act and Extraterritorial Application

18   The Lanham Act "confers broad jurisdictional powers upon the courts of the United

19   States." Steele v. Bulova Watch Co., 344 U.S. 280, 283 (1952). The Supreme Court has held the

20   Lanham Act can be applied extraterritorially. Id. at 287. The Ninth Circuit says the Lanham Act

21   should be applied extraterritorially where: (1) the defendant's action creates some effect on

22   American foreign commerce, (2) the effect is sufficiently great to present a cognizable injury to

23   plaintiff under the Lanham Act, and (3) "the interests of and links to American foreign

24

1   commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of

2   extraterritorial authority." <u>Reebok Int'l v. Marnatech Enters.</u>, 970 F.2d 552, 554 (9th Cir. 1992).

3   These are known as the "<u>Timberlane</u> factors."

4               A.  Effect on American Foreign Commerce & Effect Sufficient to Present

5                   Cognizable Injury

6           To meet the first two prongs of the <u>Timberlane</u> test, a plaintiff need only show there is

7   "some" effect on United States foreign commerce. <u>Wells Fargo & Co. v. Wells Fargo Express</u>

8   <u>Co.</u>, 556 F.2d 406, 428 (9th Cir. 1977).  To evaluate these factors, a court should look not to the

9   locus of the activity sought to be reached, but to the nature of its effect on that commerce which

10  Congress may regulate. <u>Id</u>. This factor can support extraterritorial jurisdiction where all

11  challenged transactions occurred abroad, and where the injury is limited to deception of

12  consumers abroad, so long as there is monetary injury in the United States to an American

13  plaintiff. <u>Love v. Associated Newspapers, Ltd.</u>, 611 F.3d 601, 613 (9th Cir. 2010).

14          Even taking the allegations in the Complaint as true and drawing all inferences in favor

15  of the Plaintiff, the facts of this case do not show an effect on U.S. foreign commerce sufficient

16  to present a cognizable Lanham Act claim. In previous cases finding extraterritorial jurisdiction

17  appropriate, either the extraterritorial commercial activity was taking place partly within the

18  United States, or the plaintiff conducted business internationally. For example, Trader Joe's cites

19  <u>Steele v. Bulova Watch Co.</u>, 344 U.S. 280 (1952) and <u>Reebok Int'l v. Marnatech Enters.</u>, 970

20  F.2d 552 (9th Cir. 1992) in support of its argument the Lanham Act should be applied

21  extraterritorially here.  It is true that in <u>Steele</u> the Supreme Court held the Lanham Act provides a

22  "broad jurisdictional grant," but that case involved the extraterritorial reach of the Lanham Act

23

24

1    where a U.S. citizen manufactured infringing products abroad and then sent them back to the

2    United States.

3           In Reebok, the Ninth Circuit held a Mexican manufacturer making and selling knock-off

4    Reebok shoes could be held liable for Lanham Act violations.  The defendant in that case

5    organized and directed the manufacture of the counterfeit shoes from the United States and then

6    sold them in Mexican border towns knowing that the shoes went back to the United States with

7    regular frequency. Because sales of the counterfeit shoes decreased Reebok's legitimate sales in

8    Mexico and the United States, the Court held the district court had jurisdiction over Reebok's

9    claims against the Mexican defendant. Id. at 557.

10          The most factually analogous case to the one presented here is Love v. Associated

11   Newspapers, Ltd., 611 F.3d 601 (9th Cir. 2010). In Love, CDs infringing on a U.S. trademark

12   were manufactured in Germany by a London manufacturer, and none of the CDs ever entered the

13   U.S. market. Id. at 613. The plaintiff in Love alleged the infringing CDs caused confusion

14   abroad, and resulted in reduced ticket sales for his U.S. tour, creating an impact on U.S.

15   commerce. Id. The Ninth Circuit found even if there was confusion abroad, it would be too great

16   a stretch to infer such overseas confusion resulted in lost ticket sales in the U.S. Id. Here, all

17   alleged infringement takes place in Canada and Trader Joe's cannot show economic harm. Even

18   if Canadian consumers are confused and believe they are shopping at Trader Joe's or an

19   approved affiliate when shopping at Pirate Joe's, there is no economic harm to Trader Joe's

20   because the products were purchased at Trader Joe's at retail price. (Dkt. No. 28 at 14.) Like in

21   Love, any "goodwill" related harm is too tenuous to support a cognizable Lanham Act claim

22   when all infringing conduct is abroad.

23

24

ORDER GRANTING MOTION TO DISMISS- 7

1    Trader Joe's argument it competes directly with Pirate Joe's for Canadian customers who

2  may purchase goods in the United States also fails.  (Dkt. No. 28 at 14.) Trader Joe's has not

3  cited, and this Court has not found, circumstances where the Lanham Act was applied to alleged

4  infringement happening entirely abroad on the grounds foreign customers will buy the infringing

5  product in their home country and not cross into the United States to purchase the legitimate

6  product here. Such an application would stretch the jurisdictional reach of the Lanham Act too

7  far.

8    Trader Joe's asserts that at the very least, dismissal is not appropriate at the Fed. R. Civ.

9  P. 12(b)(1) stage, arguing <u>Love</u> is distinguishable because it addressed a summary judgment

10  motion. (Dkt. No. 28 at 11, n. 4.) For this proposition it cites a recent decision in <u>Airwair Int'l</u>

11  <u>Ltd. v. Vans, Inc.</u>, 2013 U. S. Dist. LEXIS 100120 (N.D. Cal. July 17, 2013). It asserts this case

12  demonstrates that even where manufacturing, advertising and selling all occurred internationally,

13  dismissal on a Fed. R. Civ. P. 12(b)(1) motion is inappropriate. (Dkt. No. 28 at 11.) This case is

14  distinguishable because the plaintiff in <u>Airwair</u> alleged infringing products were making their

15  way back to the United States, causing confusion and damaging goodwill. <u>Airwair</u>, 2013 U.S.

16  Dist. LEXIS 2013 at *10. Further, in <u>Airwair</u>, the allegedly infringing goods were advertised in

17  the United States through a website. <u>Id</u>. at *10-11. The Northern District of California

18  specifically distinguished <u>Love</u>, noting in <u>Love</u> it was undisputed that all relevant infringing

19  actions occurred abroad. <u>Id</u>. Here, there is no dispute that all allegedly infringing activity occurs

20  in Canada. (Dkt. No. 1 at 6.) Taking all Trader Joe's allegations as true and drawing all

21  inferences in their favor, it has not alleged facts to show

22  Pirate Joe's action creates some effect on American foreign commerce or that any effect is

23  sufficiently great to present a cognizable injury to plaintiffs under the Lanham Act.

24

| | |
|---|---|
| 1 |                 B.  Interest and Links to American Foreign Commerce |
| 2 | Analyzing the third factor of the <u>Timberlane</u> test "involves the balancing of seven |
| 3 | relevant factors: The degree of conflict with foreign law or policy, the nationality or allegiance of |
| 4 | the parties and the locations or principal places of business of corporations, the extent to which |
| 5 | enforcement by either state can be expected to achieve compliance, the relative significance of |
| 6 | effects on the United States as compared with those elsewhere, the extent to which there is |
| 7 | explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the |
| 8 | relative importance to the violations charged of conduct within the United States as compared |
| 9 | with conduct abroad." <u>Reebok</u>, 970 F.2d at 555. |
| 10 |         1.  Degree of conflict with foreign law or policy |
| 11 | Pirate Joe's cites <u>Star-Kist Foods, Inc. v. P.J. Rhodes & Co.</u>, 769 F.2d 1393 (9th Cir. |
| 12 | 1985) for the proposition that where the commerce sought to be restrained is wholly foreign |
| 13 | application of the Lanham Act could create a conflict with that foreign country's patent and |
| 14 | trademark law. (Dkt. No. 25 at 6l.) <u>Star-Kist</u> involved foreign commerce in the Philippines where |
| 15 | there was a pending petition to cancel trademark registrations in the Philippine Patent Office. |
| 16 | <u>Star-Kist</u>, 769 F.3d at 1396. Trader Joe's correctly notes courts in this District have found in the |
| 17 | past where there is no related pending proceeding in the foreign country at issue, there is little |
| 18 | risk of conflict with foreign law or policy. <u>Best Western Int'l v. 1496815 Ont., Inc</u>., 2007 U.S. |
| 19 | Dist. LEXIS 18447, *20 (D. Ariz. Mar. 13, 2007). The circumstance here is more analogous to |
| 20 | Star-Kist. As Trader Joe's noted in a letter sent to Defendant, Trader Joe's has two pending |
| 21 | trademark applications pending in Canada. (Dkt. No. 29 at 6.) Because the alleged infringement |
| 22 | at issue is wholly foreign and there are related pending matters in Canada, this factor weighs |
| 23 | against extraterritorial application of the Lanham Act. |
| 24 | |

1        2.   Nationality or allegiance of parties and locations of corporations

2           Trader Joe's is a California corporation with its principal place of business in California.

3    (Dkt. No. 1 at 1.) Defendant Pirate Joe's is based in Canada with its principal place of business

4    in Vancouver, British Columbia, Canada. (Id. at 2.)  Defendant Hallatt is a Canadian citizen with

5    U.S. Permanent Resident Alien status. (Dkt. No. 25 at 7.) It is undisputed Hallatt makes frequent

6    trips to the U.S. to purchase products at Trader Joe's to sell at Pirate Joe's. Although Pirate Joe's

7    does not operate outside Canada, Hallatt's connections with the U.S. are likely sufficient to

8    support extraterritorial jurisdiction. See, Reebok Int'l, 970 F.2d at 556-57.

9        3.   Extent to which enforcement by either state can be expected to achieve compliance

10          Pirate Joe's argues enforcing compliance from the U.S. will be difficult because Pirate

11   Joe's is a Canadian corporation and Hallatt is a Canadian citizen. Compliance is easily achieved

12   when a U.S. company or individual is doing the alleged infringing. Ocean Garden, Inc. v.

13   Marktrade Co., 953 F.2d 500, 504 (9th Cir. 1991). Trader Joe's cites an order from the District of

14   New Mexico in Basis Int'l v. Research in Motion Ltd., for the proposition this factor can weigh

15   in favor of extraterritorial jurisdiction even where the defendant is a foreign national. 827 F.

16   Supp. 1302, 1305 (D.N.M. 2011). Basis is distinguishable because in Basis, it was alleged the

17   defendant "conducted extensive business in [the U.S.], and that almost half of [defendant's]

18   revenue [came] from [the U.S.]." Id. at 1307. This factor has generally been analyzed not as how

19   likely the foreign country at issue is to respect an order of a U.S. Court, but instead as how strong

20   a foreign defendant's presence is in the United States. Id. Here, this factor weighs against

21   extraterritorial application of the Lanham Act.

22       4.   Relative significance of effects on United States as compared with those elsewhere

23

24

1    When allegedly infringing activities are wholly foreign, the effects on the U.S. are

2    considered "relatively insignificant." Star-Kist, 769 F.2d at 1396. As discussed above, Pirate

3    Joe's is paying market price for Trader Joe's food and re-selling it in Canada. The impact on

4    Canadian consumers and Canadian commerce is more significant than the impact in the United

5    States, even if the Court were to assume there is some diversion of business or reputational

6    impact. This factor weighs against extraterritorial application of the Lanham Act.

7        5.   Extent to which there is explicit purpose to harm or affect American commerce

8        Under the facts of this case, this factor is analytically difficult. This case is distinct from

9    other cases analyzing application of extraterritorial jurisdiction of the Lanham Act because most

10   cases involve infringement where the defendant is creating some product that is or is intended to

11   replace the plaintiff's product. See, e.g., Reebok, 970 F.2d at 554. Pirate Joe's makes it quite

12   clear it is intentionally purchasing food from Trader Joe's and selling it in Canada. (Dkt. No. 29

13   at 10-11.) It is unclear this is an intent to harm. The food is purchased at retail price from Trader

14   Joe's. At best, this factor weighs neutrally.

15       6.   Foreseeability of such effect

16       As discussed above, it is unclear there is an intent to harm. It follows that harm is not

17   necessarily foreseeable. This factor weighs against extraterritorial application of the Lanham

18   Act.

19       7.   Relative importance to violations charged of conduct within the United States as

20            compared with conduct abroad

21       Plaintiff cites the Ninth Circuit case Ocean Garden for the proposition this factor weighs

22   in favor of extraterritorial jurisdiction even when all conduct occurred outside the U.S. and no

23   infringing items entered the U.S. (Dkt. No. 28 at 21), 953 F.3d at 504. Unlike here, the defendant

24

1 in <u>Ocean Garden</u> was a U.S. corporation. 953 F.2d at 504. The Ninth Circuit has analyzed this

2 factor by comparing the significance of actions taking place in the U.S. to the significance of

3 actions taking place abroad. <u>Reebok</u>, 960 F.2d at 557.  On these facts, the actions are more

4 significant in Canada. Pirate Joe's lawfully purchases food in the U.S. from Trader Joe's; the

5 alleged infringement occurs when the food is re-sold in Canada. This factor weighs against

6 extraterritorial application of the Lanham Act.

7       Because evaluation of the <u>Timberlane</u> factors instructs against extraterritorial application

8 of the Lanham Act, this Court finds it has no subject matter jurisdiction in this case.

9       III.    Leave to Amend

10       Trader Joe's asks the Court for leave to amend to allege additional facts supporting either

11 its Lanham Act claims or diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(2).

12 (Dkt. No. 28 at 22.) Fed. R. Civ. P. 15(a)(2)  says a party may amend its pleading with leave of

13 the court, and "the court should freely give leave when justice so requires." "Five factors are

14 frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue

15 delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff

16 has previously amended his complaint." <u>Allen v. Beverly Hills</u>, 911 F.2d 367, 373 (9th Cir.

17 1990). There is no evidence of bad faith or undue delay in this case, and Plaintiff has not

18 previously amended its Complaint.

19       Leave to amend here turns on the issue of futility, because if amendment is not futile any

20 prejudice to Pirate Joe's would be outweighed by the interest of justice. Courts should not grant

21 leave to amend where amendment is futile. <u>Nunes v. Ashcroft</u>, 348 F.3d 815, 818 (9th Cir.

22 2003).  Amendment is futile when "the pleading could not be possibly cured by the allegation of

23 other facts." <u>Id</u>., quoting <u>Doe v. U.S.</u> 58 F.3d 494, 497 (9th Cir. 1995).

24

1        Trader Joe's cannot add facts to support jurisdiction under the Lanham Act. The facts of

2   the alleged wrongful conduct are straightforward. Even if Trader Joe's were to bring further

3   allegations to support a showing of economic harm under the Lanham Act, extraterritorial

4   jurisdiction would not be supported. The above analysis, finding extraterritorial jurisdiction is

5   not supported, was already made drawing all inferences in favor of Trader Joe's. The request to

6   amend to allege additional facts supporting extraterritorial application of the Lanham Act is

7   DENIED.

8        Alternatively, Trader Joe's asks to amend to allege additional facts supporting diversity

9   subject matter jurisdiction. (Dkt. No. 28 at 23.) While the Lanham Act claims cannot survive

10  even with amendment, Trader Joe's also brought state law claims in their Complaint. (Dkt. No. 1

11  at 12-13.) The state law claims were properly brought because federal courts have supplemental

12  jurisdiction over state law claims where a claim with original jurisdiction is also properly

13  brought. 28 U.S.C. § 1367. When a federal claim is dismissed for lack of subject matter

14  jurisdiction, a federal court cannot retain supplemental jurisdiction over state law claims. Scott v.

15  Pasadena Unified Sch. Dist. 306 F.3d 646, 664 (9th Cir. 2002). For this reason the state law

16  claims are dismissed along with the Lanham Act claims.

17       Trader Joe's may, however, amend its Complaint to assert and independent jurisdictional

18  basis for its state law claims. Under 28 U.S.C. §1332(a)(2), district courts have jurisdiction over

19  civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs,

20  "between citizens of a State and citizens or subjects of a foreign state, except . . . [where the

21  citizen of a foreign state is] lawfully admitted for permanent residence in the United States and

22  [is] domiciled in the same State[.]" It is undisputed Trader Joe's is a U.S. corporation with its

23  principal place of business in California. (Dkt. No. 1 at 1.) Defendant Hallatt is a Canadian

24

ORDER GRANTING MOTION TO DISMISS- 13

1  citizen with U.S. Permanent Resident Alien status. (Dkt. No. 26 at 1.) No allegations are made

2  with regard to Hallatt's domicile. It appears undisputed Pirate Joe's is a citizen of Canada under

3  28 U.S.C. § 1332(c); Trader Joe's alleges Pirate Joe's is "based" in Vancouver, Canada with its

4  principal place of business in Canada. (Dkt. No. 1 at 2.)

5       Based on the information before the Court, Trader Joe's may be able to allege additional

6  facts supporting diversity jurisdiction over its state law claims. For this reason the request for

7  leave to amend to allege additional facts going to diversity jurisdiction to over the state law

8  claims is GRANTED.

9  **Conclusion**

10       Although the Lanham Act has a broad jurisdictional grant, it is not without limits when it

11  comes to extraterritorial application.  Taking all of Plaintiff's allegations as true and drawing all

12  inferences in its favor, extraterritorial application of the Lanham Act is not supported. Plaintiff's

13  motion is GRANTED and this case is DISMISSED. The Lanham Act claims are DISMISSED

14  with prejudice. Trader Joe's is granted leave to amend its Complaint within ten (10) days of this

15  Order to support diversity jurisdiction over their state law claims.

16

17       The clerk is ordered to provide copies of this order to all counsel.

18       Dated this 2nd day of October, 2013.

19

20

21                    Marsha J. Pechman

22                    Chief United States District Judge

23

24

ORDER GRANTING MOTION TO DISMISS- 14