UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRADER JOE'S COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL NORMAN HALLATT, an individual, d/b/a PIRATE JOE'S a/k/a TRANSILVANIA TRADING, and DOES 1-10,<br><br>Defendants. | CASE NO. C13-768 MJP<br><br>ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT |

This matter is before the Court on Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (Dkt. No. 39.) The Court considered the motion, Plaintiff's response (Dkt. No. 40), Defendants' reply (Dkt. No. 41), Plaintiff's surreply (Dkt. No. 43), the Amended Complaint (Dkt. No. 35) and all related documents. The Court GRANTS the motion and DISMISSES the Amended Complaint.

## Background

Plaintiff Trader Joe's Company, a California Corporation, brings this case against Defendants Michael Norman Hallatt, an individual Canadian citizen and U.S. Permanent Resident Alien, and Pirate Joe's, a Canadian Corporation (collectively, "Pirate Joe's"). (Dkt. No. 35 at 1-2.) Hallatt does business as Pirate Joe's, also/formerly known as Transilvania Trading Company. (Id.) Trader Joe's is a grocery retailer in the United States with more than 400 stores in 35 states, including 18 stores in the state of Washington. (Id. at 4.) Trader Joe's advertises its products through a newsletter, radio advertising and its website. (Id.) Customers cannot purchase Trader Joe's products through its website. (Id.)

Trader Joe's has a distinctive mark registered by the U.S. Patent and Trademark Office. (Dkt. No. 35 at 4.) Trader Joe's primarily uses a single mark to identify both its retail grocery stores and services, and the majority of foods sold in the stores. (Id.) In its stores, Trader Joe's has a distinctive theme "evocative of the South Pacific and of travel and trade in the late Nineteenth Century." (Id. at 6.) Trader Joe's alleges its family of marks has "achieved great fame both within and outside the United States." (Id. at 7.) According to Trader Joe's, more than 40 percent of credit card transactions in the Trader Joe's Bellingham, Washington store, which is near the Canadian border, are with non-U.S. Residents. (Id.)

In or around October 2011, Trader Joe's employees in Bellingham noticed Defendant Michael Norman Hallatt was visiting the store three to five times each week, buying large quantities of Trader Joe's branded products. (Dkt. No. 35 at 10.) When employees confronted him, Trader Joe's says Hallatt responded he was creating a delivery service for people in Canada. (Id.) Hallatt was informed Trader Joe's did not approve of this activity. (Id.) In or around

January 2012, Trader Joe's learned Hallatt had opened a store in Vancouver, British Columbia, Canada, at which he resold products he had purchased at Trader Joe's. (Id.) That same month, Hallatt was informed by Trader Joe's staff that due to his resale activity Trader Joe's would no longer serve him as a customer. (Id.) Hallatt continued to purchase Trader Joe's products using disguises and/or third parties, and continued to resell the products at his store in Canada. (Id.) Trader Joe's alleges by March 2012, Hallatt's store, operating as Transilvania Trading, sold only Trader Joe's branded products and was decorated with three banners reading "We [heart] Trader Joe's," and a sandwich board reading "We sell Trader Joe's," and employees wore "I [heart] Trader Joe's" t-shirts. (Id.)

In March 2012, Trader Joe's sent a letter to Hallatt demanding Hallatt cease and desist all sales and promotion of Trader Joe's products, and discontinue the use of Trader Joe's trademarks. (Dkt. No. 35 at 11.) Defendants continued to acquire and sell Trader Joe's branded products, and later that year moved the store to a new location and changed the name to "Pirate Joe's." (Id.) By March 2013, Trader Joe's alleges Pirate Joe's had adopted the distinctive store theme and trade dress of Trader Joe's, and its entire inventory consisted of Trader Joe's branded products. (Id.) Trader Joe's believes Defendants do not transport the products purchased at Trader Joe's in sealed containers or at the properly controlled temperatures, and they do not inspect their store inventory for safety or quality. (Id. at 13.) Further, Trader Joe's argues Defendants do not offer their customers the same liberal return policy offered by Trader Joe's. (Id.) Trader Joe's alleges Defendants have spent more than $350,000 purchasing Trader Joe's branded products for resale at Pirate Joe's and/or Transilvania Trading. (Id.)

Trader Joe's initially brought its case seeking relief under the Lanham Act for Federal Trademark Infringement, 15 U.S.C. § 1114(1); Unfair Competition, False Endorsement and

False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A); False Advertising, 15 U.S.C. § 1125(a)(1)(B); and Federal Trademark Dilution, 15 U.S.C. § 1125(c). (Dkt. No. 1 at 9-11.) Plaintiff also brought claims under state law, including Dilution under RCW § 19.77.160 and a Consumer Protection Act claim under RCW § 19.86.090. (Dkt. No. 1 at 12-13.) The basis for federal jurisdiction in the original Complaint was the Lanham Act. On October 2, 2013, this Court granted Defendants' motion to dismiss the Lanham Act claims, and denied Plaintiff leave to amend those claims on futility grounds. (Dkt. No. 34 at 13.) The Court found it lacked subject matter jurisdiction based on the allegations in the initial Complaint. The Court did, however, grant Plaintiff leave to amend its Complaint to allege facts that would allow this Court to retain jurisdiction over the remaining state law claims. (Id. at 13-14.) Trader Joe's brought its Amended Complaint on October 15, 2013. (Dkt. No. 35.)

On October 29, 2013 Defendants brought the motion to dismiss at issue here pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 39.) Defendants seek dismissal of Plaintiff's Amended Complaint, arguing (1) Plaintiff has not sufficiently alleged a claim for Dilution under Washington law where the allegedly infringing activity occurs entirely out of state; (2) Plaintiff's Consumer Protection Act ("CPA") claim cannot survive because it is not a per se CPA claim and the claim fails to meet the test for a non-per se CPA claim; (3) the Commerce Clause of the United States Constitution prevents Plaintiff's claims; and (4) punitive damages cannot be awarded for out of state conduct. (Id. at 3-8.) Trader Joe's opposes the motion to dismiss and responds to Pirate Joe's arguments, primarily asserting (1) the motion is procedurally defective because Pirate Joe's failed to raise the issues in responding to Trader Joe's initial Complaint which also contained the state law claims; (2) the Dilution claims apply to out of state conduct; (3) the Lanham Act does not preempt the state dilution claim and the Commerce Clause does not

limit the state law; and (4) the CPA claim is a per se claim because it is predicated on the dilution claim. (Dkt. No. 40.)

**Analysis**

I.      Motion to Dismiss

The Federal Rules require a plaintiff to plead "a short and plain statement of the claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"). In determining plausibility, the Court accepts all facts in the Complaint as true. Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009). The Court need not accept as true any legal conclusions put forth by the plaintiff. Iqbal, 556 U.S. at 678.

II.     Procedural Posture

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be brought before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b). "Under the Federal Rules of Civil procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005.) Rule 12(g)(2) limits the making of multiple motions to dismiss,

stating "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

It is "well established" in the Ninth Circuit that an amended complaint supersedes an original complaint, and the original is treated as non-existent once the amended complaint is filed. Valadez-Lopez v. Chertoff, 656 F.3d 851, 857 (9th Cir. 2011). When a complaint is dismissed and an amended complaint is filed, a defendant is entitled to challenge the viability of the amended complaint regardless of any actions taken toward the original complaint. Bromfield v. McBurney, 2008 U.S. Dist. LEXIS 55095, *4-5 (W.D. Wash. July 3, 2008).

This Court dismissed Plaintiff's original Complaint, in its entirety, for lack of subject matter jurisdiction. (Dkt. No. 34 at 13.) Some claims were dismissed with prejudice, and on others the Court granted leave to amend. (Id.) When Plaintiff brought its Amended Complaint, it was not a continuation of the original Complaint. Further, Plaintiff's original Complaint was dismissed for lack of subject matter jurisdiction; the Court could not have considered any defenses against the state claims at that time, having no jurisdiction over the Complaint as a whole. Defendant has not responded to the Amended Complaint and is therefore permitted to bring a motion to dismiss the Amended Compliant pursuant to Fed. R. Civ. P. 12(b)(6). The motion to dismiss is not procedurally barred.

III. Dilution Claim

Pirate Joe's makes several arguments going to the defectiveness of Trader Joe's state Dilution claim. Primarily, it argues the statutory language mandates that the state Dilution statute, RCW § 19.77.160, applies only to the use of marks within the state of Washington. Defendants base the argument first on a plain reading of the statue, which states the owner of a famous mark, "subject to the principles of equity and upon such terms as the court deems

ORDER GRANTING MOTION TO DISMISS
AMENDED COMPLAINT- 6

reasonable," is entitled to "an injunction against another person's commercial use in this state of [that] mark[.]" RCW § 19.77.160. Plaintiff argues Pirate Joe's "commits [a] logical fallacy . . . by concluding that a famous mark owner's statutory entitlement to an in-state injunction somehow requires the plaintiff to establish in-state use by an infringer in its case-in-chief." (Dkt. No. 40 at 8.) Plaintiff asserts the "in this state" language applies to the scope of the injunction available under § 19.77.160, and does not place a requirement on the location of infringement. (Id.)

Plaintiff's argument is circular. If an owner of a famous mark is only entitled to an injunction in the state of Washington under the Washington statute, the statue is useless to any dilution occurring out of state because the injunction could not reach such dilution. The Court reads the statute as requiring at least some offending activity to occur within the state of Washington for the statute to be applicable, and finds even Plaintiff's reading of the statute does not contradict this requirement. Plaintiff does not cite a single case applying the Washington statute to conduct occurring even partially out of state, let alone entirely out of state. Instead, Plaintiff cites case law interpreting non-Washington state statutes, and involving facts where at least some offending conduct occurred within the state at issue. See, Stern's Miracle-Gro Products, Inc. v. Shark Prods., Inc., 823 F.Supp. 1077, 1081 (S.D.N.Y. 1993) (applying New York State law to infringement by a New York corporation, occurring at least partially in New York); Instrumentalist Co. v. Marine Corps League, 509 F. Supp. 323, 340 (N.D. Ill. 1981) (applying Illinois law to "enjoin conduct in Illinois and elsewhere" and holding the Illinois law could enjoin both in and out of state conduct).

A plain reading of the Washington Dilution statute and a review of the case law indicates where no allegedly diluting activity occurred within the state of Washington, the Washington

Dilution statute is not triggered. Because Plaintiff does not allege diluting activity within the state of Washington, Plaintiff fails to state a claim upon which relief can be granted. Defendants' motion is GRANTED as to the Dilution claim and that claim is DISMISSED. Because the Court finds dismissal necessary on the grounds discussed above, it does not reach the Commerce Clause argument.

IV. Consumer Protection Act Claim

"A consumer protection act claim may be based on a per se violation of a statute or on unfair or deceptive practices unregulated by statute but involving the public interest." Blake v. Fed. Way Cycle Ctr., 40 Wn. App. 302, 308 (1985). To make a per se claim under the CPA, the claims must be predicated on a statute which "contains a specific declaration of the public interest." Brummett v. Washington's Lottery, 171 Wn. App. 664, 677 (2012). While Plaintiff argues its CPA claim is based on its Dilution claim under RCW § 19.77.160, and therefore the claim is a per se violation, RCW § 19.77.160 does not contain a specific declaration of the public interest and is therefore not an appropriate statute upon which to base a per se CPA claim.

To prevail on a CPA claim which is not per se, a plaintiff must show (1) an unfair or deceptive practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injuring plaintiff in his business or property, and (5) caused by the unfair or deceptive act. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 791 (1986). Under RCW § 19.86.010(2), the "trade or commerce" element of the CPA claim is defined as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." (Dkt. No. 39 at 7.) Defendants argue Plaintiff cannot make a Washington CPA claim because it has not alleged any affect on any Washington resident. (Dkt. No. 41 at 12.)

In this case, Plaintiff asserts Defendants purchase goods from its stores in Washington State, transport the goods to Canada, and wrongfully resell the goods. The conduct which is actually alleged to be wrongful, the reselling of goods, occurs exclusively in Canada. Plaintiff argues the citizens of Washington are "directly or indirectly" impacted by the wrongful conduct because Plaintiff has several stores within the state and employs many Washington citizens. (Dkt. No. 40 at 13.) Plaintiff argues non-Washington resident plaintiffs have been allowed to assert Washington CPA claims, citing Red Lion Hotels Franchising, Inc. v. MAK, LLC, which notes the territorial reach of the Washington CPA is "an open question." 663 F.3d 1080, 1091 (9th Cir. 2011).

The Court agrees Plaintiff's California citizenship does not automatically bar it from bringing a Washington CPA claim, but finds the "trade or commerce" element of the Washington CPA claim not met where Plaintiff is not alleging any wrongful conduct in Washington, and the alleged harm to Washington residents is extremely tangential. In each case supplied by Plaintiff to support its CPA claim, the allegedly wrongful activity was taking place in the state of Washington or there was a significant Washington connection. In Red Lion, the court was evaluating a dispute over a franchise agreement, where the franchise at issue was out of state but the franchisor was incorporated in Washington, had its headquarters in Washington, and the franchise agreement provided for the application of Washington law. Id. at 1091.

In Rajagopalan v. NoteWorld, LLC, this Court noted a North Carolina resident was not prohibited from bringing a Washington CPA claim against a Washington corporation, reasoning Washington State has a strong interest in enforcing its laws against its own businesses. 2012 U.S. Dist. LEXIS 29849, * 14 (W.D. Wash. Mar. 6, 2012). In McGinnis v. T-Mobile USA, Inc., this Court refused to decide at the pleading stage whether a plaintiff with no connection to

Washington may "never the less sue a defendant for conduct occurring solely within the state of Washington." 2008 U.S. Dist. LEXIS 88501, *3 (W.D. Wash. Oct. 30, 2008). While these cases may involve out of state plaintiffs, they also involve wrongful conduct occurring within Washington.

Although the Washington CPA applies where the impact on the people of Washington is indirect, the Court finds it would be overreaching to apply the Washington CPA where the alleged wrongful conduct is taking place entirely out of state and no party involved is a Washington resident. While Plaintiff may argue some of the wrongful conduct does take place in Washington because Defendant Hallatt buys the goods he resells in Canada at Washington Trader Joe's stores, it is clear from the Amended Complaint the conduct forming the basis of Plaintiff's claims is the reselling of Trader Joe's products, not the purchase of them at Trader Joe's stores. (Dkt. No. 35 at 16.) Plaintiff's CPA claims alleges "Pirate Joe's use of the Trader Joe's trademarks to engage in the unauthorized promotion, marketing, and resale of Trader Joe's products not subject to Trader Joe's quality control measures is a deceptive practice occurring in trade or commerce that impacts the public interest and has caused injury to Trader Joe's." (Id.) All of the offensive conduct complained of takes place in Canada. Plaintiff has not pointed out any case law, and the Court finds none, where the Washington CPA was applied to such tangential in-state harm. The Court GRANTS the motion and DISMISSES Plaintiff's CPA claim. Because the Court grants the motion for the reasons set forth above, it does not reach the Commerce Clause argument.

**Conclusion**

Plaintiff does not state a claim upon which relief can be granted because the Washington CPA and the Washington Dilution statute do not apply where no Party is a Washington resident,

all allegedly wrongful conduct occurs out of state, and any harm to Washington residents is extremely tangential if at all existent. Defendants' motion to dismiss is GRANTED. The Court finds, based on the facts of this case, no amendment could cure the defects which necessitate dismissal of Plaintiff's claims. For this reason, the case is DISMISSED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 18th day of December, 2013.

Marsha J. Pechman
Chief United States District Judge